**Bonnie Rickman CHURCH et al., Appellants,**

v.

**DEPARTMENT FOR HUMAN RESOURCES, Commonwealth of Kentucky, Appellee.**

Court of Appeals of Kentucky.

April 8, 1977.

Rehearing Denied June 3, 1977.

Discretionary Review Denied Oct. 4, 1977.

Pam E. Goldman, Appalachian Research and Defense Fund of Kentucky, Inc., Prestonsburg, for appellants.

Lynn T. Mitchell, Bureau for Social Services, Dept. for Human Resources, Frankfort, Eldred E. Adams, Jr., Louisa, for appellee.

Before COOPER, HOGGE and REYNOLDS, JJ.

COOPER, Judge.

This case is on appeal from a judgment of the Lawrence Circuit Court, which judgment terminated the parental rights of the Appellants, pursuant to KRS 199.600. The issues before the Court are:

(1) what standard of proof is necessary to terminate parental rights pursuant to KRS 199.600, and;

(2) whether substantial evidence existed in the record to support the judgment of the Lawrence Circuit Court.

The infants, Roy Michael Church born January 15, 1969, Vicky Lynn Church born July 23, 1971, Robert Walter Joseph Church born April 16, 1973 and William Clarence John Church born June 1, 1974, were born to Bonnie Rickman Church and Leroy Church. The parents of these children now live with their three other children in Boyd County, Kentucky.

As a result of a referral from the Lawrence County Health Department, representatives from the Department for Human Resources, Donnie Martin and Barbara Whites, began visiting in the home of the Defendants, Bonnie Church and Leroy Church in November, 1971. Their home was then located in Lawrence County, Kentucky. Donnie Martin, a case worker for the Department for Human Resources, and Barbara Whites, a homemaker for that agency, visited in the home in Lawrence County, Kentucky, periodically from November, 1971 through May, 1973. During this period of time the Church home was found to be very dirty with a very bad odor. Evidence indicates that it was very poorly heated in the winter time and the situation remained the same during this period of time in spite of offers to help by the homemaker for the Department for Human Resources. As a result of these conditions, the children were committed to the Department for Human Resources by the Lawrence County Juvenile Court in May of 1973. Because of the Church family's moving to Boyd County, they were then committed by the Department as neglected and dependent children by Order of the Boyd County Juvenile Court. In June of that same year they were placed in foster care by the Department for Human Resources. On August 20, 1973, the children were returned to their parents home under the supervision of Mrs. Sara Dunlap, a Boyd County worker for the Department for Human Resources. After their return in August of 1973, the youngest child, William Clarence John Church, was born on June 1, 1974. The children remained in the Church home for thirteen (13) months, during which period of time Mrs. Dunlap visited many times in the home. She testified at the hearing that she found conditions in the home to be filthy and a bad odor with garbage strewn about the kitchen. She further testified that she had witnessed the children eating only two substantial meals in the entire period of her visit, and she testified that she had been there many times at meal time. She stated that only junk-type food was kept in the house. Mrs. Dunlap testified that medical attention was given to the children only at her insistence and that she freely offered transportation to health facilities, as well as offering to have a health nurse visit the home. These offers were usually refused.

On October 31, 1974, the four youngest children were again placed in a foster care home after a hearing before the Boyd County Juvenile Court. The medical examination revealed that the youngest child was suffering from malnutrition and Dr. Garner Robinson testified that Robert was suffering from chronic malnutrition. Testimony exists which indicates the older children were found to be very dirty with Robert suffering with sores behind his ears, in his nose, as well as suffering from impetigo. There is some evidence that the older children have missed many days of school without explanation.

Mr. Church testified that he works on a poultry farm and makes between $110–$115 per week and also that he brings home approximately three dozen eggs per week from the poultry farm where he works. The family also receives food stamps.

KRS 199.600(1) reads as follows:

In a proceeding involving a neglected or abandoned child as defined in KRS 199.011, the circuit court may terminate all parental rights of the parents of such child, and declare the child to be a ward of the state, and may vest the care, custody and control of the child in the department, or in any licensed child-caring or child-placing agency or institution, if facilities are available to receive the child, if it is pleaded and proved in a private hearing that the parents have abandoned or deserted the child, or have substantially and continuously or repeatedly refused or being able have neglected, to give the child parental care and protection, or that the child is neglected and that the parents have been adjudged mentally incompetent and such judgment has been in effect for not less than one (1) year.

■ The Appellant contends that this Court should require that the evidence to support such a termination of parental rights be "clear and convincing". The legislature, which is charged with the protection of dependent children in the Commonwealth, in writing the statute did not impose upon the trial court a standard of proof in concluding that children have been abandoned, deserted or neglected. Consequently, it is not within the discretion of this Court to impose an artificial standard on the trial court in the absence of a legislative guideline.

■ This Court is bound by Rule 52.01 which states that "findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses". In the case of *Byerly Motors, Inc. v. Phillips Petroleum,* Ky., 346 S.W.2d 762 (1961) at page 765, the Court held "the rule does not require this court to accept findings which are unsupported by the evidence, but it does place upon a party seeking to have such findings vacated the burden to show that they are clearly erroneous conclusions from all the evidence; that is to say, that the findings are not supported by substantial evidence". As in that case, it is the province of this Court only to find whether or not the judgment of the Lawrence Circuit Court is or is not supported by substantial evidence. As provided in Rule 52.01, this Court must give deference to the trial court's presence at the hearing and it's unique view of the evidence. This Court is not charged with weighing the evidence, but ascertaining whether substantial evidence exists to support that judgment. The testimony of the various workers for the Department for Human Resources, the medical testimony of the physicians who have treated the children, and even the testimony of the Appellants themselves convince us that the judgment of the lower court was not clearly erroneous and that substantial evidence exists to support that judgment.

We affirm.

All concur.